UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RANDEL REELE CRANDALL,<br><br>                 Plaintiff,<br>    v.<br><br>J WILLIAMS,<br><br>                 Defendants. | Case No. C18-5341 RBL-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for February 21, 2020 |

Plaintiff, proceeding *pro se* and *in forma pauperis,* brought this action under 42 U.S.C. § 1983 against Officer J. Williams, his arresting officer, for the alleged use of excessive force. Dkt. 1, 4. Pending before the Court is defendant's Motion for Summary Judgment. Dkt. 22. For the reasons set forth below, the undersigned recommends that the Court DENY defendant's Motion for Summary Judgment.

## FACTUAL AND PROCEDURAL HISTORY

A. <u>Plaintiff's Complaint</u>

Plaintiff's complaint alleges that Officer Williams broke plaintiff's arm with a baton during the course of an arrest. Dkt. 4. Plaintiff also alleges that Officer Williams' action constituted excessive force. *Id.*

B. <u>Defendant's Motion for Summary Judgment</u>

In support of this Motion for Summary Judgement Officer Williams filed the Affidavit of Jean P. Homan (Dkt. 23), the Affidavit of Officer Jared Williams (Dkt. 24) and

REPORT AND RECOMMENDATION - 1

the Declaration of Robert E. Jonas (Dkt. 25, 29[1]). Pursuant to Federal Rule of Civil Procedure (FRCP) 56, the Court may consider the evidence submitted in support of the motion, but the Court may not weigh the evidence or decide credibility. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986).

    1. <u>Affidavit of Jean P. Hoffman</u>

In support of defendant's motion, Ms. Homan attached a number of exhibits to her affidavit. Dkt. 23. Attached as Exhibit 1 is a disc containing four audio recordings of emergency calls made by plaintiff's family to the police on March 31, 2018. Dkt 23 Ex. 1. The first audio recording is from plaintiff's mother seeking police assistance because plaintiff had allegedly attacked his younger brother and was on his way to his grandparents' home. *Id* at Ex. 1-A. In the audio recording, plaintiff's mother warns the dispatcher that plaintiff was dangerous and had been charged with "brutally beating an officer" four years prior. *Id*.

The second audio recording is the call made by plaintiff's step father to the police department. *Id.* at Ex. 1-B. Plaintiff's step father informs the dispatcher that plaintiff had attacked plaintiff's younger brother, plaintiff left after he was unable to reenter the home and was now at plaintiff's grandparents' home. *Id*. The third audio recording is the 911 call from plaintiff's mother informing the dispatcher that plaintiff was trying to enter his grandparents' home. *Id.* at Ex. 1-C. The final audio recording is the 911 call from plaintiff's grandmother informing the dispatcher that plaintiff was harming himself outside the home while his grandfather attempted to calm him down. *Id.* Ex. 1-D.

---

[1] Defendant originally filed the declaration as Dkt. 25. Dkt 25 contained personal identifiers and was administratively sealed by the Court. In compliance with Federal Rule of Civil Procedure 5.2 and Local Civil Rule 5.2, defendant filed the redacted declaration of Robert E. Jonas. Dkt. 29.

REPORT AND RECOMMENDATION - 2

At the end of the last call, plaintiff's grandmother informs the dispatcher that she believed that the police officers had detained plaintiff. *Id.* Ms. Homan also attached the dispatcher notes contained in the CAD Incident Inquiry for these emergency calls. *Id.* at Ex. 2

In connection with the events occurring on March 31, 2018, plaintiff was charged with: 1) Assault in the Third Degree for assaulting Officer J. Williams, 2) Assault in the Third Degree for assaulting Officer D. Holter, 3) Criminal Trespass in the First Degree, and 4) Assault in the Fourth Degree for assaulting his younger brother. Dkt. 23 at Ex. 3-5. However, because plaintiff's family did not wish to pursue the charges involving the family, the Deputy Prosecuting Attorney dismissed the charges of Criminal Trespass and Assault in the Fourth Degree. *Id.* at Ex. 7-8. Ultimately, plaintiff pled guilty to assaulting Officer D. Holter. *Id.* at Ex. 9. In the "Statement of Defendant on Plea of Guilty" plaintiff identified the factual basis for the plea of guilty as; "[o]n March 31, 2018, in the state of Washington, I did unlawfully and feloniously, under circumstances not amounting to assault 1 or 2, did intentionally assault D. Holter, who was a law enforcement officer performing his duties at the time of the assault." *Id.*

2. Plaintiff's Deposition

Ms. Homan also attached the deposition of plaintiff as Exhibit 12 to her affidavit. During his deposition, plaintiff confirmed that this action arises from the events occurring "around the time" of March 31, 2018. Dkt. 23 at Ex 12 at p. 67. Plaintiff stated that during the incident he did not present a danger to the officers and that Officer Williams struck plaintiff with a baton without warning or "saying anything to [plaintiff]." *Id.*

1       During plaintiff's deposition he explained his version of events preceding the
2 purported baton strike. Plaintiff's account of the events is summarized as follows. On
3 March 31, 2018 plaintiff unsuccessfully attempted to admit himself to the emergency
4 room at two different hospitals to receive necessary psychiatric medication. *Id.* at 67,
5 68. After his unsuccessful visits to the emergency room, he went to his grandparents'
6 home. *Id.* at 69. At his grandparents' home, plaintiff suffered an anxiety attack causing
7 him to fall over. *Id.* Plaintiff hit the back of his head on the ledge of the fireplace, causing
8 plaintiff to bleed from the back of his head. *Id.* at 69-70.

9       After hitting his head, plaintiff exited his grandparents' home. *Id.* Plaintiff felt
10 uncomfortable because of the heat and the fact that he was bleeding from his head, so
11 he took off his coat and shirt because "that made [him] feel better". *Id.* at 68, 70.

12       Once outside, plaintiff saw two police patrol cars driving in his direction and
13 approached the police cars seeking medical attention. *Id.* Plaintiff ran towards the cars
14 "flapping" his arms with his hands clenched, the patrol cars stopped, Officer Williams
15 exited his car and without any warning or provocation struck plaintiff in the hand. *Id.* at
16 68-70. After being hit by Officer Williams, plaintiff ran away from the officers and an
17 officer deployed a taser on plaintiff. *Id.* at 70-71. While plaintiff was being arrested, an
18 officer stepped on his broken hand, but plaintiff acknowledges that he is uncertain
19 whether this was intentional. *Id.* at 71. As a result of the injuries sustained, plaintiff
20 needed to attend physical therapy and continues to suffer effects from the injury. *Id.* at
21 71-72.

REPORT AND RECOMMENDATION - 4

3.  <u>Affidavit of Officer Jared Williams</u>

Officer Williams states that on March 31, 2018 he was on duty in his capacity as a Tacoma police officer and was dispatched to the home of plaintiff's parents responding to reported domestic violence. Dkt. 24, Affidavit of Officer Jared Williams, at 1-2, ¶¶ 3-4.

Officer Williams states that upon arriving at the home, plaintiff's parents informed him that plaintiff was "in a scuffle" with plaintiff's grandfather at his home in Fircrest. *Id.* at 2-3, ¶ 5. Officer Williams then informed dispatch of this information, requested that Fircrest police respond and advised dispatch that he and Officer Holter would also respond. *Id.*

Officer Williams asserts that as he approached, he observed a male matching plaintiff's description running towards the car in the middle of the road, shirtless and bleeding from the head. *Id.* Officer Williams states that plaintiff was clenching his fists and yelling. *Id.* Officer Williams stopped the patrol vehicle, exited the vehicle and pulled out his wooden baton. *Id.* at 3, ¶ 6. Plaintiff then started yelling at Officer Williams, "COME GET ME! COME ON!" *Id.* Officer Williams states that plaintiff was smiling, laughing, and "appeared to be taunting" him. *Id.*

Plaintiff then took a stance, keeping his fist clenched, in what Officer Williams perceived as an assaultive position. *Id.* Officer Williams commanded plaintiff to get on the ground, but plaintiff ignored the order and moved in a circle around Officer Williams while continuing to shout at him. *Id.* at 3, ¶¶ 6-7. Officer Williams asserts that he told Officer Holter to deploy his taser, which (according to Officer Williams' account) Officer

Holter did with no effect on plaintiff. Dkt. 24, Williams Affidavit, at 3, ¶ 7. Plaintiff then ran away from the two officers and the officers pursued plaintiff on foot. *Id.*

After a brief pursuit, plaintiff suddenly turned towards Officer Williams and ran at him "at full speed." *Id.* at 4, ¶ 8. Officer Williams proceeded to display his baton and warned plaintiff to stop running. *Id.* Plaintiff continued to run at Officer Williams; fearing an assault, Officer Williams sidestepped to his left and struck plaintiff in the forearm with the baton. *Id.*

The baton shattered, and plaintiff responded, "wow you're good at that." *Id.* Officer Williams states that the baton strike had no effect on plaintiff other than to distract him. *Id.* Officer Holter used his taser on plaintiff a second time. *Id.* After initially falling down, plaintiff stood up and took an aggressive stance against the officers. *Id.*

Plaintiff then lunged at Officer Holter and Officer Holter struck plaintiff's lower body with a metal baton. *Id.* at 5, ¶ 10. After this strike, which purportedly had no effect, the officers were able grab plaintiff and escort him to the ground. *Id.* Plaintiff continued to struggle against the two officers as they pinned him to the ground and placed him in handcuffs. *Id.* at 5-6, ¶¶ 10-11. Officer Williams states that it took five officers to control plaintiff enough to strap him to a gurney for transport to the hospital. *Id.* at ¶ 11.

Officer Williams states that after plaintiff was arrested and transported to the hospital, he was able to contact plaintiff's parents regarding the alleged domestic violence that prompted the initial 911 call. *Id.* at 6-7, ¶ 12. Officer Williams states that during his investigation plaintiff's family informed him of plaintiff's previous conduct and the details of the incidents at plaintiff's parent's home. *Id.*

A difference is pointed out by Officer Williams -- between Officer Williams' account of the incident with plaintiff and Officer Holter's account of the incident. *Id.* at 4-5, ¶ 9. According to the facts described by Officer Holter, Officer Williams struck plaintiff with the baton *before* Officer Holter first deployed his taser. *Id.* Officer Williams disagrees with Officer Holter's recollection of the events surrounding the baton strike. *Id.*

    4. <u>Declaration of Robert E. Jonas</u>

In support of the current motion, Officer Williams also submitted the Declaration of Robert E. Jonas. Dkt. 25, 29. Mr. Jonas states that the events underlying this action occurred in front of his home. Dkt. 29 at 1. Mr. Jonas states that he saw a young man yelling, "acting mentally disturbed" and harming himself with a sharp piece of a soda can. *Id.* at 2. Fearing for his safety Mr. Jonas called 911. *Id.*

Mr. Jonas claims that he observed the young man sprint towards the officers while taking off his shirt, and that the young man "was yelling and appeared agitated, disoriented, very angry, and incoherent." *Id.* Mr. Jonas states that the officers gave the young man verbal commands and the young man was defiant to the commands. *Id.* According to Mr. Jonas, an officer deployed a taser on the young man, but it had no effect and it took approximately six to eight officers to wrestle him to the ground. *Id.* Mr. Jonas states that once the young man was on the ground he began to bang his own head on the ground and the officers held him down to prevent him from harming himself. *Id.* Finally, Mr. Jonas observed that it appeared that officers were injured during the struggle. *Id.*

## DISCUSSION

Summary judgment is supported if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

1   material fact and that the movant is entitled to judgment as a matter of law. Federal
2   Rule of Civil Procedure (FRCP) 56(c). The moving party bears the initial burden to
3   demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v.*
4   *Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is
5   presented when there is sufficient evidence for a reasonable jury to return a verdict for
6   the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). A
7   "material" fact is one which is "relevant to an element of a claim or defense and whose
8   existence might affect the outcome of the suit," and the materiality of which is
9   "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific*
10  *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

11       When the Court considers a motion for summary judgment, "[t]he evidence of the
12  non-movant is to be believed, and all justifiable inferences are to be drawn in [their]
13  favor." *Id.,* at 255. However, the Court is not allowed to weigh evidence or decide
14  credibility. *Anderson v. Liberty Lobby, Inc.*, at 255. If the moving party meets their initial
15  burden, an adverse party may not rest upon the mere allegations or denials of his
16  pleading; his or her response, by affidavits or as otherwise provided in FRCP 56, must
17  set forth specific facts showing there is a genuine issue for trial. FRCP 56(e)(2). The
18  Court may not disregard evidence solely based on its self-serving nature. *Nigro v.*
19  *Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015).

20       In response to the motion for summary judgment, the nonmoving party is
21  required to present specific facts, and cannot rely on conclusory allegations. *Hansen v.*
22  *U.S.,* 7 F.3d 137, 138 (9th Cir. 1993). The court must determine whether the specific
23  facts that are presented by the non-moving party, considered along with undisputed
24
25

context and background facts, would show that a rational or reasonable jury might return a verdict in the non-moving party's favor based on that evidence. *Emeldi v. University of Oregon,* 698 F.3d 715, 728-29 (9th Cir. 2012).

A. Qualified Immunity

First, defendant argues that plaintiff's action should be dismissed because defendant is immune from the suit pursuant to the doctrine of qualified immunity. Dkt. 22. Defendant argues that defendant's use of force was objectively reasonable under the circumstances and therefore did not violate plaintiff's Constitutionally protected rights. *Id.* at 9-12. Alternatively, defendant argues that he is entitled to qualified immunity because the right at issue was not "so clearly established by case law decided before the events in question that no reasonable officer would think his actions constitutional." *Id.* at 12-15. The undersigned recommends the Court find that disputed questions of material fact preclude a finding of qualified immunity.

The United States Supreme Court has explained that a government official is entitled to qualified immunity under Section 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) (quoting *Reichle v. Howard*, 566 U.S. 658, 664 (2012)); *see also, City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). A right is "clearly established" when existing precedent places the "statutory or constitutional question beyond debate" such that every reasonable officer would understand that the conduct violated that right. *Reichle*, 566 U.S. at 664.

REPORT AND RECOMMENDATION - 9

When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the plaintiff with respect to central facts. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per curiam). If there is a genuine issue of material fact concerning both: (1) Whether it would be clear to a reasonable officer that their conduct was unlawful under the circumstances they confronted, and (2) Whether the defendant's conduct violated a constitutional right" then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

1. <u>Violation of Federal Statutory or Constitutional Right</u>

Plaintiff asserts that Officer Williams violated plaintiff's rights by using excessive force when striking plaintiff in the hand with a baton with such force that it broke plaintiff's hand. Dkt. 4.

The United States Supreme Court has held that when an excessive force claim arises in the context of an arrest, the claim is most properly characterized as invoking the protections of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (citing *Tenn. v. Garner*, 471 U.S. 1, 5 (1985)). Determining whether the force used is reasonable under the Fourth Amendment requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interest at stake." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (quoting *Graham*, 490 U.S. at 396).

There is no "easy-to-apply legal test" for determining whether the amount of force used was reasonable, instead the Court must "slosh [it's] way through the factbound morass of 'reasonableness.'" *Scott v. Harris*, 550 U.S. 372, 383 (2007). The

REPORT AND RECOMMENDATION - 10

ultimate question, regardless of the amount of force used, is whether the use of force and the officer's actions were reasonable under the circumstance presented. *Id.*

The United States Supreme Court set out the following factors to consider when evaluating the government interest at stake; (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. 396-97. The United States Supreme Court has also advised that:

> [T]he question whether an officer used excessive force "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Ibid.* And "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make a split-second judgment – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Kisela v. Huges*, 138 S.Ct. 1148, 1152 (2018) (quoting *Graham*, 490 U.S. at 396-97).

The most important factor that the Court must consider is whether the suspect posed an "immediate threat to the safety of the officers or others." *Mattos*, 661, F.3d at 441. "However, a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). Finally, the factors laid out in *Graham* are not exclusive and the Court must examine the totality of the circumstances of the particular case. *Mattos* 661 F.3d at 441.

REPORT AND RECOMMENDATION - 11

First, in this case the record presents inconsistent versions of events. In his deposition, plaintiff alleges that after sustaining a head injury he ran to Officer Williams and Officer Holter seeking medical attention. Dkt. 23 at Ex. 12 at 67-70. Plaintiff alleges that when he approached the officers, Officer Williams struck him with a baton without warning or provocation. *Id.* Officer Williams, on the other hand, alleges that he deployed the baton strike after several warnings, an ineffective taser strike, a foot pursuit and while plaintiff was attacking Officer Williams. Dkt 24. Officer Holter's recollection of the events (according to Officer Williams) is that Officer Williams struck plaintiff with a baton as the first use of force, *before* Officer Holter deployed the taser. Dkt. 24 at 4. Finally, Mr. Jonas declared that there were 6-8 officers who wrestled plaintiff to the ground and does not state that the officers deployed a baton strike. Dkt. 29.

Additionally, Ms. Homan's Affidavit includes audio recordings of 911 calls from plaintiff's family informing the police dispatcher of plaintiff's purported conduct and criminal history. Dkt. 23 at Ex. 1. However, it is not clear from the record what information Officer Williams had when he first encountered plaintiff. Officer Williams states that he was called to a home regarding a domestic violence call where the caller reported that plaintiff had assaulted family members at the home. Dkt. 24 at ¶ 4. Officer Williams further states that upon arriving at the home he was told that plaintiff was "at his grandparents right now fighting" and that plaintiff was "in a scuffle" with his grandfather. *Id.* at ¶ 5. Officer Williams later states that he learned of the details of plaintiff's conduct, *after* the baton strike, while plaintiff was being transported to the hospital. *Id.* at ¶ 12-13. Therefore, it is unclear from the record what information Officer Williams knew at the time that he first encountered plaintiff.

REPORT AND RECOMMENDATION - 12

Based on the record and the evidence presented by defendant in support of the motion for summary judgment, there are genuinely disputed questions of material fact regarding the circumstances and events that happened during the alleged excessive use of force. Additionally, in order to weigh the *Graham* factors and determine the reasonableness of defendant's conduct, the Court would need to weigh the facts and determine the credibility of witnesses. Because genuine disputes of material facts that relate to the plaintiff's claim and the potential defenses remain, the Court should decline to grant the defense summary judgment motion and decline to decide whether the defendant's conduct was objectively reasonable.

### 2. Clearly Established Right

To determine whether there was clearly established law, the Court has stated, "[w]hile there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate"; and also, "there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Wesby,* at 590. A clearly established right exists if "controlling authority or a robust consensus of cases of persuasive authority" have held, on facts that are close or analogous to the current case, that such a right exists. *Hines v. Youseff,* 914 F.3d 1218, 1229-30 (9th Cir. 2019).

In some contexts, there may be a general constitutional rule that has been identified in court decisions – and it may apply with such obvious clarity to the specific conduct of a defendant, that qualified immunity will not apply even though existing case law did not describe the specific factual scenario in the current situation. *United States*

1  *v. Lanier,* 520 U.S. 259, 271 (1997); *Bonivert v. City of Clarkston,* 883 F.3d 865, 872-73
2  (9th Cir. 2018). If qualified immunity operated as a shield for all conduct that was not
3  specifically addressed in existing case law at the time of the event in question, then
4  officials would not ever be held accountable for unprecedented constitutional violations
5  that would appear obvious. *Hope v. Pelzer,* 536 U.S. 730, 740-42 (2002) (finding that a
6  correctional officer's act of handcuffing an inmate to a hitching post in a painful position
7  under dangerous and degrading circumstances was "antithetical to human dignity" and
8  so obviously wanton, painful and cruel under the Eighth Amendment that the officer had
9  fair notice that this was unlawful under existing legal precedent).

10        The Ninth Circuit Court of Appeals has held that "it is rarely necessary, if ever, for
11  a police officer to employ substantial force without warning against an individual who is
12  suspected of only minor offenses, is not resisting arrest, and, most important, does not
13  pose any apparent threat to officer or public safety." *Young v. County of Los Angeles*,
14  655 F.3d 1156, 1166-67 (9th Cir 2011) (holding that the use of pepper spray and baton
15  excessive force against a non-compliant suspect who did not appear to be a threat to
16  the officer or public safety and was not attempting to flee). Further, the "right to be free
17  from the application of non-trivial force for engaging in mere passive resistance was
18  clearly established prior to 2008." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th
19  Cir. 2013). Finally, force can only be objectively reasonable when there is need for
20  force. *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007).

21        There are questions of fact in this case regarding the circumstances and events
22  leading to Officer Williams striking plaintiff in the hand. Here, plaintiff is alleging that he

1  was running in Officer Williams direction because he was injured and needed medical
2  attention. Dkt 23 at Ex. 12 at 67-70.
3      Plaintiff alleges that when he was within a few feet from the police officers he
4  stopped running and Officer Williams, without warning, struck plaintiff in the hand with a
5  baton with such force that it broke plaintiff's hand. *Id*.
6      By contrast, defendant alleges that plaintiff took a stance and began taunting the
7  police officers before fleeing. Dkt. 24 at ¶ 6-7. Defendant alleges that after a pursuit,
8  plaintiff charged at defendant despite orders to stop and warnings that force would be
9  used if he did not stop charging at the officer. *Id*. at ¶ 8. Defendant states that he struck
10 plaintiff with a baton in self-defense to prevent an assault. Id. at ¶ 9.
11     When reviewing a motion for summary judgment, "[t]he evidence of the
12 nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor,"
13 because "[c]redibility determinations, the weighing of the evidence, and the drawing of
14 legitimate inferences from facts are jury functions, not those of a judge." *Blakenhorn*,
15 485 F.3d at 470 (quoting *Anderson*, 477 U.S. at 255.)  Here, if the jury were to believe
16 and credit the plaintiff's version of events, Officer Williams' conduct, striking a non-
17 violent person seeking medical attention, would constitute excessive force in violation of
18 the Fourth Amendment. Additionally, it was clearly established law in 2018 that an
19 unprovoked baton strike without warning to a non-violent, non-fleeing person was an
20 objectively unreasonable use of force. *Gravelet-Blondin*, 728 F.3d at 1093, *Young*, 655
21 F.3d at 1166-67, *Blankenhorn*, 485 F.3d at 481.
22     For the reasons set forth herein, the undersigned recommends that the Court find
23 that genuine disputes of material facts present in this case preclude a finding of
24
25

REPORT AND RECOMMENDATION - 15

qualified immunity. Accordingly, the Court should DENY defendant's motion for summary judgment on the ground of qualified immunity.

B. Heck Bar

Defendant argues that plaintiff's claims are barred by *Heck v. Humphrey* because they are fundamentally inconsistent with his criminal conviction for assaulting Officer Holter. For the reasons set forth below, the undersigned recommends that the Court find that plaintiff's claims are not barred by *Heck v. Humphrey.*

When a person confined by the government is challenging the very fact or duration of his physical imprisonment, and the relief he seeks will determine that he is or was entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus. *Preiser v. Rodriguez*, 41 U.S. 475, 500 (1973). "[T]o recover damages for an alleged unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of writ of habeas corpus, 28 U.S.C. § 2254." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). To state a Section 1983 claim that would necessarily invalidate a prisoner's confinement or its duration, the plaintiff must show that the sentence or conviction has been invalidated prior to bringing the Section 1983 action. *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005).

If a single continuous transaction is the basis for both a plaintiff's prior conviction and claim of excessive force, *Heck* bars the plaintiff's claim when success on the

REPORT AND RECOMMENDATION - 16

1  excessive force claim would invalidate the plaintiff's prior conviction. *See, Cunningham*
2  *v. Gates*, 312 F.3d 1148, 1155 (9th Cir. 2002). However, when the conviction and the
3  excessive force claim do not arise from the same facts, *Heck* does not bar the plaintiff's
4  claims. *See, Cunningham*, 312 F.3d at 1155 (discussing *Smithart v. Towery*, 79 F.3d
5  951, 952-53 (9th Cir. 1996)), *Hooper v. County of San Diego*, 629 F.3d 1127, 1132-34
6  (9th Cir. 2011). In fact, in *Hooper v. County of San Diego*, the Ninth Circuit explained
7  that "when the conviction and the §1983 claim are based on different actions during
8  'one continuous transaction'" the Section 1983 claims are not bared by *Heck*. 629 F.3d
9  at 1134. Additionally, if success in the plaintiff's civil action would not necessarily
10 "demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the
11 action should be allowed to proceed." *Heck*, 512 U.S. at 487.
12      In support of this motion defendant submitted plaintiff's "Statement of Defendant
13 on Plea of Guilty" from his plea of guilty to one count of assault in the third degree. Dkt.
14 23 at Ex. 9. Plaintiff identified the factual basis for the plea of guilty, stating, "[o]n March
15 31, 2018, in the state of Washington, I did unlawfully and feloniously under
16 circumstances not amounting to assault 1 or 2, did intentionally assault D. Holter, who
17 was a law enforcement officer performing his duties at the time of the assault." *Id*.
18      As has been discussed in this Report and Recommendation, there are several
19 differing and inconsistent accounts of the events leading to the purported excessive use
20 of force. In his deposition, plaintiff does not discuss the assault of Officer Holter. *Id*. at
21 Ex. 12. Plaintiff's statement in his guilty plea and Officer William's Affidavit are the only
22 accounts describing the assault of Officer Holter. Officer William's Affidavit states that
23 he struck plaintiff with the baton before plaintiff lunged at Officer Holter. Dkt 24 at ¶ 8-9.
24
25

REPORT AND RECOMMENDATION - 17

Officer William's account of the facts states that after he struck plaintiff with the baton, Officer Holter deployed a taser to subdue plaintiff. *Id.* at 8, 10. Officer Williams states that after Officer Holter's taser caused plaintiff to fall to the pavement, plaintiff stood up, took a bladed stance and then lunged at Officer Holter. *Id.* at ¶ 10.

Because this is a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor" *T.W. Elec. Serv.,* 809 F.2d at 630. The justified inference from the record, drawn in plaintiff's favor, is that plaintiff's assault of Officer Holter occurred *after* Officer Williams' purported excessive use of force. Therefore, plaintiff's assault conviction appears to be based on different facts that occurred after the facts underlying his claim for excessive force. Accordingly, it is not clear from the record that success in this action would necessarily invalidate or call in to question plaintiff's prior conviction for the assault of Officer Holter.

Based on the foregoing, the undersigned recommends that the Court DENY defendant's motion for summary judgment on the ground that plaintiff's claims are *Heck* barred.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court DENY defendants' motion for summary judgment.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b)(2). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). If objections are filed, the parties shall have **fourteen (14) days** from the service of the objections to file a

response. FRCP 72(b)(2). Accommodating this time limitation, this matter shall be set for consideration on February 21, 2020, as noted in the caption.

Dated this 23rd day of January, 2020.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19